BERNARD E. MALONEY, as Supervisor of the Town of Florence, County of Oneida, et al., Plaintiffs, *v.* COUNTY OF ONEIDA et al., Defendants.

Supreme Court, Special Term, Oneida County, April 12, 1950.

*James M. O'Hara* for plaintiffs.

*Pirnie Pritchard,* County Attorney, for defendants.

SEARL, J. This is an action for a declaratory judgment. A jural question is presented. Therefore, the court must hold that a declaratory judgment is proper. (*Post* v. *Metropolitan Cas. Ins. Co. of N. Y.,* 227 App. Div. 156, affd. 254 N. Y. 541.)

Respective attorneys have stipulated certain facts material to the issues to be decided:

That all of the plaintiffs, except James Spellicy, comprise the town board of the town of Florence, Oneida County, New York; that James Spellicy is the town superintendent of highways of the town of Florence; the corporate existence of the town and the county of Oneida; that defendant, Walter J. O'Brien is the County Superintendent of Highways of the County of Oneida; that within the confines of the town of Florence there are approximately nineteen miles of county roads; that heretofore plaintiffs were advised by the office of the Comptroller of the State of New York that a town may not remove snow and ice from a county road and that a town may not rent its highway equipment to a county to be used for such purposes at less than the prevailing rate as established by section 142-c of the Highway Law; that prior to the commencement of the action the officials of the town were subject to criticism by the examiner of the municipal accounts for the office of the Comptroller of the State of New York by allowing its equipment to be so used by the county; that on December 15, 1948, by resolution duly passed by the Board of Supervisors of the county, the county superintendent was authorized to enter into contracts with various towns in Oneida County to plow certain county roads as designated as the county system of roads, and to remove snow and ice therefrom, and to sand the same at the rate of $75 per mile during the winter of 1948 to 1949; that prior to the passage of such resolution the supervisor of the town of Florence received a communication dated September 24, 1948, from Frank C. Moore, State Comptroller, stating in substance that the town was not required by law to plow snow on county roads and if the town did so plow snow on county roads, it could only do so by renting town highway equipment to the county for that purpose, pursuant to section 142-c of the Highway Law; that an opinion by the Chief Municipal Consultant to the Department of Audit and Control, dated February 2, 1948, was enclosed with such communication; that relying upon such information, the

town demanded that such county roads as were within the confines of the town be under the care, supervision and maintenance of, and snow and ice thereon be removed, by the county or its agents and servants; that thereafter and on or about January 14, 1949, the county, through its superintendent of highways, Walter J. O'Brien, directed a letter to James Spellicy, as town superintendent of highways for the town of Florence, directing the town superintendent to perform his duties relative to snow removal on the public highways of the town, and that in event he failed to carry out these instructions that the county superintendent intended to file charges for the removal of the town superintendent on the grounds of malfeasance and nonfeasance, in accordance with section 160 of the Highway Law; that on January 17, 1949, the town superintendent replied to the county superintendent that he was performing and would continue to perform whatever duties were necessary and proper with respect to the highways under his jurisdiction, whether the same related to snow removal or otherwise, and called to the attention of the county superintendent that interpretation of the law by the county superintendent was contrary to the ruling of the Attorney-General of the State of New York in respect to the removal of snow and ice; that after receipt by the town superintendent of the letter of January 14, 1949, aforesaid, from the county superintendent, the town board passed a resolution to effect that the legal questions involved would be submitted to a court of competent jurisdiction with respect to the removal of snow and ice from county roads; that the orders contained in the letter of the county superintendent placed the plaintiffs in a position of jeopardy without adequate protection of compensation for the services demanded to be performed.

Plaintiffs urge that no adequate remedy at law exists, that the only remedy is to present the controversy to the Supreme Court of the State of New York for the determination of the rights of the parties. It is further stipulated that the town used its eight-ton truck, with wing, equipped with driver and helper for snow and ice removal during the season of 1948–1949, a total of 235½ hours; that the rate per hour for the use of the truck, pursuant to section 142-c of the Highway Law was $6.05 per hour, and that the rate for the driver and helper was eighty cents per hour each, making a total of $1,801.57; that the town also used its one and one-half ton truck, with wing, equipped with driver and two men thereon for snow and ice removal during said season for a total of forty-two hours and that at the rate prescribed by section 142-c, aforesaid, a sum of $182.70

was incurred; that the town used, in connection with the sanding of county roads, within the confines of the town, one ton of rock salt in the sum of $23; that the plaintiffs claim that the county refused to maintain the county roads within the town of Florence with respect to ice and snow removal, and demanded that the plaintiffs do so, and that the county did not remove any ice or snow from said county roads during the period aforesaid, but that said work was performed by the town, and the county has not reimbursed the town therefor.

The plaintiffs claim that by reason of the arbitrary and coercive threat made by the defendants to summarily remove some or all of the plaintiffs from their duties, that the latter have been forced to engage in the work of snow removal to which the law did not compel them so to do; that for the protection of the public the removal of snow and ice, as well as sanding was necessary; that there has been actual expenditure to the amount indicated, and that the plaintiffs should properly be reimbursed for such expenditure.

The plaintiffs therefore ask for a judgment of this court declaring:

1. That the town has no right or duty to remove snow or ice from county highways located within the confines of the town.

2. That the town superintendent has no right or duty to remove snow or ice from county highways located within the town.

3. That the duty for the removal of snow and ice from said county highways is the duty of the County of Oneida and/or the county superintendent.

4. That the town may not rent the equipment to the county to be used by the county directly or indirectly to remove snow and ice from county roads at less than the rates and charges as fixed and determined by section 142-c of the Highway Law.

5. That the County of Oneida and/or its agents and servants be required to compensate the plaintiffs for services performed as aforesaid, pursuant to the provisions of section 142-c.

The defendants, by amended answer to the complaint, ask a declaratory judgment in terms substantially opposite from those demanded by the plaintiffs.

Considering first the contentions of the plaintiffs, we find that section 3 of the Highway Law, as amended by chapter 248 of the Laws of 1937, and as finally amended by chapter 337 of the Laws of 1945, divides highways into five classes. Subdivisions 1 and 2 relate to State Highways; subdivision 3 relates to State Thruways; subdivision 4 specifies " County roads are those

roads improved, maintained and repaired under article 6 of this chapter and roads constructed or improved under a general or special law, which are maintained by the county.'' Subdivision 5 specifies: '' Town highways are those constructed, improved or maintained by the town with the aid of the state or county, * * * including all highways in towns, outside of incorporated villages constituting separate road districts which do not belong to either of the two preceding classes.'' Thus, we have State Highways, so termed, comprising classes one and two; State Thruways, comprising subdivision three; county roads, as defined in subdivision four; and town highways, which include all highways in the towns which are not included within either subdivision three or four.

It is elementary that a town can be held only through the neglect or refusal to act of its superintendent. Section 140 of the Highway Law sets forth the '' *General powers and duties of town superintendent* '':

'' The town superintendent shall, subject to the rules and regulations of the department of public works, made and adopted as provided in this chapter:

'' 1. Have the care and superintendence of the *town highways* and bridges and board walks or renewals thereof on highways less than two rods in width, in the town * * *.

'' 2. Cause *such* highways and bridges * * * on highways less than two rods in width to be kept in repair, and free from obstructions *caused by snow* and give the necessary directions therefor, * * *.

'' 3. Divide the town into as many sections as may be necessary for the proper maintenance and repair of *the town highways* therein, and the opening of highways obstructed by snow.

'' 4. Employ such persons *with teams and implements,* as may be necessary for the proper maintenance and repair of town highways and bridges, and the removal of obstructions caused by snow, * * *.'' (Italics inserted.)

The above are the only obligations imposed by law on a town superintendent so far as snow removal is concerned. Under the classification of highways as contained in section 3, above referred to, subdivision 4 is the only one dealing with '' county *roads.*'' All other subdivisions deal with highways or thruways. Therefore it must be clear that the only obligation placed on a town superintendent relates to the removal of snow from town highways. This is made doubly clear when town highways are defined as being '' less than two rods in width.''

The demand of the county superintendent in the instant action was not only that the town superintendent remove snow from " public highways ", but the resolution of the Board of Supervisors, passed December 15, 1948, authorized the contracts with the towns for not only snow, but also " ice control," and, in addition, to " sand same when necessary." Even assuming, but by no means admitting, that the statute required the towns to remove snow, nowhere in the statute, either directly or impliedly, is there any obligation to remove ice, or to sand. The only mention, with reference to " ice ", is contained in the repealed subdivision 9 and this obligation relates to " culverts and waterways."

Therefore we must conclude that the town superintendent was within his rights in refusing to contract to plow, remove ice and to sand some eighteen to nineteen miles of county roads at a loss to the taxpayers of the town, especially in view of the direct prohibition of the State Comptroller to contract at a price less than provided for in section 142-c. Notwithstanding these facts, the town superintendent, evidently apprehensive of danger to the public should the county roads be left with snow and ice upon them, performed the work under protest and sought his remedy where he should, in the court.

This court agrees with the opinion of the State Comptroller and his Chief Municipal Consultant to the extent that the obligations of the town superintendent relate to town highways only.

No statute imposes the obligation and a town possesses only such powers as are expressly conferred by statute.

The conclusion of the court is confirmed by the decision of the Fourth Department in *Graham* v. *Town of Urbana* (235 App. Div. 275, 276) in which the court states that the section " clearly refers to town highways ", citing *Ferguson* v. *Town of Lewisboro* (213 N. Y. 141).

Defendants apparently rely largely upon the wording found in *People ex rel. Root* v. *Board of Supervisors* (146 N. Y. 107, 112) wherein the court wrote: " From the foundation of the state government the duty of maintaining highways and bridges has been cast on the towns, and not, as in England, upon counties." The decision in the *Root* case (*supra*) was rendered in 1895, before the enactment of section 140, which specifically defines the duties of the town superintendent, confining his duties to town highways. It would seem only reasonable that a town should look after its own modest town highways, narrow, little used in comparison to the huge arteries of travel, State highways and county roads, with almost a steady stream of light

and heavy motor traffic. The volume of such traffic during the horse and buggy days can in no wise be compared to the crowded thoroughfares of today. To argue that a duty rests upon a sparsely populated town to furnish equipment and manpower to remove snow and ice and to sand a section of a main State highway, or thruway, that might be constructed through the town for the convenience of the entire traveling public from many States would seem almost ridiculous. The statute makes no such demands. The same may be said as to county roads, with only a somewhat modified degree of traffic.

The only other subdivision relating to snow is contained in subdivision 9 of section 140 of the Highway Law, which relates to " state highways." This subdivision was repealed, however, by chapter 472 of the Laws of 1948, effective March 24, 1948.

The County of Oneida has designated its county roads, which includes the eighteen to nineteen miles within the town of Florence, as recognized by the resolution of the Board of Supervisors on December 15, 1948. In that resolution is quoted a portion of section 135 of the Highway Law: " Any county may annually appropriate and expend such sum as it deems proper for the removal of snow from the county roads of the county ", and " the board shall designate the county roads from which the snow is to be removed." The county now urges that the law only permits such removal by use of the word " may ". However, if so, the privilege is accepted by an appropriation for snow removal, ice removal and sanding. It is a bit inconsistent to argue that the obligation rests upon the town of Florence. Why pay the town $75 per mile, at a loss to the town, if the entire obligation rests upon the town? Sections 1 and 2 of chapter 564 of the Laws of 1910, as amended (McKinney's Uncons. Laws, §§ 2731, 2732) provide that in a county containing a city of the first or second class, the Board of Supervisors may adopt a county road system. Although the County of Oneida has not adopted such a system, yet the wording of the act throws some additional light upon the problem presently before the court. Section 2 provides that county roads as defined in the law, when the system is adopted, " shall be exclusively under the jurisdiction of the board of supervisors and exempt from the jurisdiction of the highway officers of the several towns, * * *."

The defendant has cited several authorities to which this court should properly make reference. One is *Murphy* v. *Village of Fort Edward* (79 Misc. 296). There an infant had sustained damages due to a defect in a highway bridge and the town was

held responsible, under sections 141 and 142 of the then existing General Village Law. No one can question but that the section under subdivision 2 requires the town superintendent, and through him the town, to cause town "highways and bridges and the board walks or renewals thereof on highways less than two rods in width to be kept in repair, and free from obstructions caused by snow * * *."

There is also a recent authority, uncited by either counsel, namely *Laitenberger* v. *State of New York* (190 Misc. 633) in which water, snow and ice had accumulated on a State highway. An award against the State to an injured passenger was affirmed by the Appellate Division in this, the fourth department. (273 App. Div. 942.) The trial court in the opinion stated (p. 641): "Section 140 aforesaid has been construed to impose a specific duty on town superintendents to remove obstructions by snow on State and county highways", citing certain authorities. Although the Appellate Division affirmed the award, the affirmance was without comment as to the expression of the lower court relative to duties of a town.

*Isaac* v. *Town of Queensbury* (277 N. Y. 37, 46–47 [1938]) cited in the *Laitenberger case* (*supra*) confirms the conclusion presently arrived at. In the *Isaac* case a portion of a State highway had been abandoned. The court held that the portion of the highway so eliminated reverted to the jurisdiction of the town of Queensbury, and that thereupon the town superintendent was charged with the duty of maintenance. Until such time as the abandoned portion reverted to the town and became a town highway the court remarked: "There is no statutory duty imposed upon the town to maintain State or county highways in a safe condition for travel or to remove obstructions therefrom except that imposed by section 53 (now section 140, subd. 9) of the Highway Law, * * *." Subdivision 9 of section 140 refers only to State highways. *Cleveland* v. *Town of Lancaster* (239 App. Div. 263) is the third authority cited in the *Laitenberger* case. Justice TAYLOR, writing for the Fourth Department in the *Cleveland* case, not only approves of the opinion of Justice CROSBY in *Graham* v. *Town of Urbana* (235 App. Div. 275, *supra*) which holds that present section 140 refers only to town highways, but specifies that the portion of the decision referring to "its highways" refers to town highways.

This court necessarily concludes, therefore, that when the lower court stated in the *Laitenberger* case (*supra*, p. 641) that "Section 140 aforesaid has been construed to impose a specific

duty on town superintendents to remove obstructions by snow on State and county highways '', such statement was dictum only. The Appellate Division, in affirming this · decision, in holding the State liable, could not have· intended tó approve ‘ the above statement of the lower court, made incidental to the conclusion reached, especially in view of the fact that the citations mentioned by the lower court in supporting his statement are at variance with the statement itself.

It appears that almost immediately after the decision in the *Laitenberger* case the Legislature repealed subdivision 9 of section 140 (L. 1948, ch. 472), removing thereby any possible ambiguity as to the duty of a town superintendent to remove '' obstructions caused by snow on state highways within the town.'' It may well be argued that there is a plain distinction between '' removal of obstructions caused by snow '', such as drifts that render the road impassable, and, on the other hand, plowing off ordinary falls of snow, removing surface ice and sanding, which defendant here urges to be the obligation imposed at common law upon the town. Sanding is a product of modern times only, known only since hard surfaced pavements have come into being.

Subdivision 2 of section 12 of the Highway Law, entitled '' *Superintendent of public works to provide for maintenance, repair, and for control of snow and ice;*'' was added by chapter 305 of the Laws of 1946. The subdivision provides, pertinent to our present inquiry: '' Notwithstanding the provisions of any general, special or local law or of any inconsistent provisions of this chapter, the maintenance of state highways in towns and incorporated villages shall include the control of· snow and ice on such highways or any parts thereof, as the superintendent of public works may deem to be necessary to provide reasonable passage and movement of vehicles over such highways. The superintendent of public works is authorized also to erect snow fences at suitable locations.''

The section then provides that the work of such control '' of snow and ice may be done '' by a county, town or incorporated village, and that the governing board of such municipality and the superintendent of public works may enter into a contract for the performance of such work. This legislation is illustrative of the gradual departure from heavy obligations formerly imposed on rural communities as to care of highways used by the ever increasing volume of traffic.

Almost contemporaneously with the insertion of subdivision 2 of section 12, relating to State highways, the Legislature

amended section 135, relative to snow removal, by applying the section to " county roads " instead of highways. (L. 1946, ch. 305.) The amended section provides: " *135. Snow removal, and cutting of weeds.* The board of supervisors of any county may annually appropriate and expend such sum as it deems proper for the removal of snow from the county roads of the county, and for sanding, or otherwise treating them, for the purpose of removing the danger due to ice and snow thereon. The board shall designate the county roads from which the snow is to be removed and the work shall be conducted in a manner to be determined by the board under the direction of the county superintendent of highways."

Immediately after the winter period of 1948–1949, with which this court is instantly concerned, there became effective April 11, 1949, section 135-a (L. 1949, ch. 513). The section allows counties to contract with towns or villages for snow removal from county roads by renting to the county superintendent of the town or village equipment at the daily rate as fixed by the State Comptroller in the exercise of supervision of municipal accounts, or " (b) By removal of snow from county roads by a town or village at an annual rate of not less than fifty dollars per mile," or " (c) By sanding or otherwise treating " at the same rate per mile, or (d) by performance of both at not less than $100 per mile.

This court concludes, therefore, from the foregoing statute and case law that our common law imposes no specific obligations on either counties or towns so far as removal of snow and ice and sanding is concerned from county roads. The common law of England placed the obligation of removal of obstructions caused by snow on the county. In New York the obligation is only such as has been imposed by statute. Our courts have held that the statutory obligation imposed by section 140 of the law relates to town highways only, as referred to in the above-mentioned authorities.

Considering the terms and provisions of the stipulation entered into between the parties, this court finds that a declaratory judgment should be entered as follows:

1. That the town of Florence has no duty imposed by law to remove snow and/or ice, nor to sand county roads within the confines of said town.

2. That the superintendent of highways of the town of Florence has no duty imposed by law to remove snow and/or ice from the county roads located within the town of Florence, Oneida County, New York.

3. That it is the duty of the County of Oneida, or its County Superintendent of Highways, to remove snow and ice and to sand county roads located within the limits of the town of Florence.

4. That the town of Florence may not rent its equipment to the County of Oneida to be used by the county to remove snow or ice or for sanding purposes at less than the rates and charges as fixed and determined by section 142-c of the Highway Law.

5. That the County of Oneida should compensate the town of Florence for services performed and materials furnished in removing snow and ice from county roads located within the confines of the town of Florence, Oneida County, New York, during the season of 1948–1949 to the extent of $1,801.57 for the use of an eight-ton Oshkosh truck with wing, and the services of driver and helper, together with $182.70 for use of one and one-half ton Chevrolet truck and wing, with driver and two men, as well as $23 for one ton of rock salt used during such season used in connection with sanding, being a total of $2,007.27.

Judgment may be entered in accordance with the terms and provision aforesaid.